**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eli GUSAN, Defendant-Appellant.**

**No. 76–1858.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1977.

Decided Feb. 11, 1977.

Rehearing Denied March 2, 1977.

Certiorari Denied April 25, 1977.
See 97 S.Ct. 1682.

Robert R. Garrett, Merrillville, Ind., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Andrew B. Baker, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SWYGERT, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The sole issue in this appeal is whether the search warrant contravened the Fourth Amendment by not describing the place to be searched with sufficient particularity.

The defendant, Eli Gusan, was indicted in two counts for knowingly possessing two firearms—a Spitfire .45 caliber machine gun and a Sten MK II machine gun, 9 mm caliber—which firearms were not registered to him, in violation of 26 U.S.C. § 5861(d). Upon a written waiver of trial by jury and submission on stipulated facts, defendant was found guilty and sentenced to seven years and a fine of $5,000 as to each count, the sentences to run concurrently. The defendant expressly reserved his right to appeal from the order of the district court of June 4, 1976, denying his motion to suppress evidence on the ground of unreasonable search and seizure. This direct appeal from the judgment of conviction of August 20, 1976, is limited to the issue of the search and seizure.

The Fourth Amendment provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Inasmuch as search and seizure cases depend so heavily upon the precise facts involved, we will examine those facts in some detail in order to apply what we believe to be the applicable law.

The affidavit supporting the search warrant was incorporated in its entirety in the search warrant, a copy of which was handed to the defendant upon his arrest and shortly prior to the search of his apartment. Although it has been held that "[i]t is the description in the search warrant, not the language of the affidavit, which determines the place to be searched," *United States v. Kaye,* 139 U.S.App.D.C. 214, 432 F.2d 647, 649 (1970), here "[t]he affidavit was incorporated into the warrant, and we shall not require that the facts stated in the affidavit be recited again on the face of the warrant when they are served together," *United States v. Rael,* 467 F.2d 333, 335 (10th Cir. 1972). *See also, United States v. Womack,* 166 U.S.App.D.C. 35, 509 F.2d 368, 382 (1975).

The affidavit thus incorporated into the search warrant described the place to be searched in the following language:

(1) "premises described as 1172 Harrison Blvd. . . . in the City of Gary, County of Lake, State of Indiana . . . ."

(2) "the establishment located at 1172 Harrison Blvd., Gary, Lake County, Indiana . . . ."

(3) "horse bets have been placed by the informant over the telephone to Eli Gusan by telephoning him at 885–0718 (which is listed to Gusan Real Estate, 1172 Harrison Blvd., Gary, Lake County, Indiana) . . . ."

(4) Eli Gusan was observed "making stops" on March 2, 4 and 17, 1976 at several addresses and finally at "1172 Harrison Blvd., Gary."

(5) On February 26, 1976 police officers "observed three male white subjects enter 1172 Harrison Blvd." and, following one of those subjects after he left, he was seen throwing out of his automobile window an envelope such as bookies sometimes use to pay off their bets.

(6) "The members of the Gary Police Department have cause to believe that the establishment located at 1172 Harrison Blvd., Gary, Indiana . . . [is] now being used as a horse betting operation."

(7) "This affidavit is made for the purpose of securing a search warrant in order that a lawful search of the herein described residence . . . *including any lower level of the residence* may be made . . . ." (Emphasis added.)

(8) "The establishment located at 1172 Harrison Blvd., Gary, Lake County, Indiana is a *Two story Duplex.* The exterior walls

are white stucco with a dark roof. *The entrance to 1172 Harrison Blvd. is a single entrance in the front with a[n] open porch and a single entrance in the rear.*" (Emphasis added.)

Pursuant to the defendant's motion to suppress, an evidentiary hearing was held before the district court on June 4, 1976, at which time the defendant's principal evidence was the testimony of the owner of the premises which included 1172 Harrison Boulevard. He testified that the building was a two-story stucco duplex, as recited in the search warrant, but that there were four separate apartments: two apartments at 1176 Harrison, which constituted the southern half of the premises and two additional apartments at 1172 Harrison, which constituted the northern half of the premises. He further testified that there were two porches, each with an entrance, on the front or east side of the building; that the southern porch entrance at 1176 provided access to the first and second-story apartments at 1176, as well as to the second-story apartment at 1172; that the northern porch entrance at 1172 provided access to the first-story apartment at 1172; that he himself occupied the first story at 1176, that the defendant leased and occupied the second-story at 1172; and that the second-story at 1176 and the first-story at 1172 were both vacant, the latter for one-and-a-half years prior to the search involved in this case.

The owner of the premises further testified that each of the four apartments was provided with separate keys and with separate gas and electric meters. However, he also testified that the four gas meters were located on the south or 1176 side of the building, that the electric meters were on the west or in the rear of the building, and that there were only *three* mailboxes, two on the front porch on the 1176 side and only one on the front porch on the 1172 side of the premises. Therefore, the police officers could not necessarily have seen, without trespassing, the gas meters on the 1176 or opposite side of the house nor the electric meters at the rear of the house, but could

have readily observed only one mailbox at 1172. Both the owner and the tenant who had vacated the first-story 1172 apartment one-and-a-half years before the search, conceded that access to the second-story 1172 apartment could be gained by entering at the porch at 1172 and going through the first-story apartment to a hallway leading to a stairway which went to the upper apartment and that was the only way one using the 1172 door could get to the second-story 1172 apartment. The owner's credibility was not supported when he testified that he could not recall whether the 1172 entrance was identified by numbers on the building.

Both the defendant and a Gary police detective agreed in their testimony that on March 19, 1976, the defendant was arrested approximately three miles from his apartment at 1172 Harrison Boulevard, was handcuffed, and was taken to the porch entrance at 1172, where the police broke a pane of glass, unlocked the door at 1172 through the broken glass, briefly searched the vacant apartment on the first floor, walked through the apartment to a hall which led to the stairs, went up the stairs to the second-story apartment and, searching it, found 109 items of betting paraphernalia, as well as the two unregistered machine guns which became the subject of the indictment in this case.

■ The defendant's theory on the motion to suppress was that the search warrant was invalid for lack of particularity in specifying 1172 Harrison Boulevard without indicating which apartment at that address or without indicating 1176 which was the address at which access to the second-story apartment at 1172 was normally gained. The defendant relies primarily on our opinions in *United States v. Hinton,* 219 F.2d 324, 326 (7th Cir. 1955), where we held that "a warrant which describes an entire building when cause is shown for searching only one apartment is void," and *United States v. Higgins,* 428 F.2d 232 (7th Cir. 1970), where a warrant which described the basement at a certain address where three families occupied separate apartments was held

to be defective. At the outset we should note that in both *Hinton* and *Higgins,* searches were made of the apartments of several innocent persons not named in the search warrants, which did not occur here.

The search warrant stated that the police officers observed the defendant enter the premises at 1172 Harrison Boulevard on three occasions. At the hearing a detective testified that he saw the defendant enter the premises through the porch door at 1172 on March 2, 3, 4, 5 and 17, 1976. The defendant himself acknowledged that he occasionally used the 1172 entrance "to check mail or something." Inasmuch as the owner of the premises testified that there were only three mailboxes, and only one of those was at 1172, it is obvious that the defendant used the 1172 mailbox as well as the 1172 entrance for access to that mailbox. The warrant stated that the defendant's telephone was listed as Gusan Real Estate, 1172 Harrison Blvd., Gary; and the 1975 telephone directory for Hammond and nearby communities was introduced at the hearing to prove that fact. Neither the owner of the premises nor the prior tenant of the first floor apartment at 1172 testified that the defendant did *not* use the 1172 entrance at the time shortly prior to the search. The detective testified that after the defendant had been arrested and was in handcuffs, he was taken to the 1172 entrance where he indicated the key which the police should use in opening that door. When the door did not open, defendant said "it sticks sometimes for me" and told the police to break the glass.

The district court said at the conclusion of the hearing:

. . . I could find and would find that the defendant on occasion used the entrance at 1172 to go into the apartment upstairs at 1172.

Inasmuch as the owner of the premises had testified that the only access between the 1172 porch entrance and the second-story apartment at 1172 was by going through the first-story apartment, as the police had done on March 19, 1976, it was necessary for the defendant to have access to the first-story apartment on the occasions when he used the 1172 entrance. The police therefore had authority to search the vacant apartment on the first floor of 1172 if the search warrant authorized the search. The warrant specifically authorized a search of 1172 Harrison Boulevard, "including any lower level of the residence." The district court found:

What I see in this case is that the authorization was for the search of the premises at 1172, and as I see it, those premises include the basement, the ground floor and the second floor.

As this court said in *Hinton* at page 326:

. . . [P]robable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit.

The defendant, although testifying on his own behalf, did not deny that he had, and used, free access to the vacant first floor apartment in order to reach his second floor apartment. He thus exercised dominion and control over the very area which the police used and searched in order to reach the contraband which they eventually seized in the second floor apartment. The police detective testified that the door separating the first floor apartment from the hall leading to the second floor stairway was unlocked; the defendant testified that it was hooked on the inside which, if true, would nevertheless enable the defendant to enter the first floor apartment with his key (or through the door, if it was open as he testified), and then go through and out of that apartment via the open or hooked door which he could unhook. Further evidence that this method of ingress into, and dominion over, the first floor apartment was exercised by the defendant is the testimony of the detective, who, upon being questioned by the court, said:

. . . [T]here is so much junk there [at the 1176 entrance] you couldn't have gotten through 1176 to begin with.

Finally, the search warrant described the entrance of three men, who later discarded

betting paraphernalia, through the 1172 door.

The search warrant in this case describes the place to be searched with more specificity than the Supreme Court required in *Steele v. United States No. 1,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), where the warrant described "the garage located in the building at 611 West 46th Street, Borough of Manhattan" and "any building or rooms connected or used in connection with said garage, the basement or sub-cellar beneath the same . . . ." The facts as developed revealed that:

> The building searched was a four-story building in New York City on the south side of West 46th Street, with a sign on it: "Indian Head Auto Truck Service— Indian Head Storage Warehouse, No. 609 and 611." It was all under lease to Steele. It was entered by three entrances from the street, one on the 609 side, which is used, and which leads to a staircase running up to the four floors. On the 611 side there is another staircase of a similar character, which is closed, and in the middle of the building is an automobile entrance from the street into a garage, and opposite to the entrance on the south side is an elevator reaching to the four stories, of sufficient size to take up a Ford machine. There is no partition between 611 and 609 on the ground or garage floor, and there were only partial partitions above, and none which prevented access to the elevator on any floor from either the 609 or 611 side. The evidence left no doubt that, though the building had two numbers, the garage business covering the whole first floor and the storage business above were of such a character and so related to the elevator that there was no real division in fact or in use of the building into separate halves. The places searched and in which the liquor was found were all rooms connected with the garage by the elevator.

*Id.* at pages 502–03, 45 S.Ct. at page 416.

The Supreme Court held that:

> The description of the building as a garage and for business purposes at 611 W. 46th Street clearly indicated the whole building as the place intended to be searched. It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended. *Rothlisberger v. United States,* 289 F. 72; *United States v. Borkowski,* 268 F. 408, 411; *Commonwealth v. Dana,* 2 Metc. 329, 336; *Metcalf v. Weed,* 66 N.H. 176, 19 A. 1091; *Rose v. State,* 171 Ind. 662, 87 N.E. 103; *McSherry v. Heimer,* 132 Minn. 260, 156 N.W. 130.
>
> Nor did the search go too far. A warrant was applied for to search any building or rooms connected or used in connection with the garage, or the basement or sub-cellar beneath the same. It is quite evident that the elevator of the garage connected it with every floor and room in the building and was intended to be used with it.

*Id.* at page 503, 45 S.Ct. at page 416.

Virtually the same effect was given to the search warrant here with the addition of the language "including the lower level of the residence." The "lower level" included the first floor apartment directly beneath the defendant's acknowledged residence. Since that area had to be passed through to reach the residence and since the defendant actually used that area in order to reach it, he exercised dominion over the otherwise vacant apartment and justified the search of it by the police in accordance with the language of the warrant authority.

In *United States v. Lee,* 448 F.2d 604, 605–06 (7th Cir. 1971), we distinguished *Hinton* in a case where the target gambling operation occupied the second floor but access was gained through the first floor and the warrant encompassed both floors. Finally, the fact that the defendant received his mail at, and listed his address in the telephone directory as, 1172 Harrison Boulevard, is evidence that his use of the 1172 entrance was not an isolated occurrence. *United States v. Melancon,* 462 F.2d 82, 92–94 (5th Cir. 1972).

■ We address a final word to district judges. More than once we have directed that rulings on motions to suppress evidence be supported by findings of fact. While such findings can be made by dictating them into the record, too often that method produces generalities rather than the specific facts we need to perform our function. District judges are again admonished to make specific, detailed findings of fact in ruling on motions to suppress evidence.

The judgment appealed from is affirmed.

AFFIRMED.

SWYGERT, Circuit Judge, concurring.

I agree with the majority that "[t]he sole issue in this appeal is whether the search warrant contravened the Fourth Amendment by not describing the place to be searched with sufficient particularity." In resolving this issue, however, the court should look only to whether the affidavit accompanying the search warrant demonstrated that there was probable cause to search the entire premises at 1172 Harrison Boulevard at the time the warrant was issued. In making this inquiry, we may consider facts that must have been apparent to the police at the time they sought the warrant, even if they were not specified in the affidavit. But we may not permit the police or trial courts to use facts that only became apparent after the warrant was issued to support a finding of probable cause for the issuance of the warrant in the first place. *See United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967).

Therefore, I am disturbed by the majority's extensive reliance on facts that were adduced at the hearing on defendant's motion to suppress. They should be considered only if they must have been obvious to the police at the time the warrant was presented to the magistrate. Under this standard, the defendant's behavior after he was arrested and the fact that the second floor apartment at 1172 Harrison Boulevard could be entered from the porch door marked "1172" only by first going through the first floor apartment are irrelevant in determining whether probable cause existed.

Even if this evidence is excluded, however, I agree with the majority that there was probable cause to search the entire premises at 1172 Harrison Boulevard. The affidavit reveals that the police had seen the defendant, who was legitimately under suspicion for illegal gambling activities, stop at 1172 Harrison Boulevard on three separate occasions. It is very likely that he used the 1172 door on those occasions. The police would have reported that he had stopped at 1176 Harrison Boulevard if he had used the 1176 door, since there is no reason to think that the police knew during the course of surveillance that the second floor apartment at 1172 could be entered through the 1176 door. Given the existence of a single mailbox at the 1172 end of the porch, the police had probable cause at the time the warrant was issued to think that the defendant had dominion and control over both the first and the second floor at the 1172 address. To invalidate the warrant now because the police failed to perceive that the first floor contained an unoccupied separate apartment would be to demand certainty rather than probable cause.