**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony DeBERRY, Defendant–
Appellant.**

No. 95–2232.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1995.

Decided Feb. 22, 1996.

Colin S. Bruce (argued), Office of the United States Attorney, Urbana Division, Urbana, IL, for Plaintiff–Appellee.

Gregory D. Fombelle (argued), Burger, Fombelle, Zachry & Rathbun, Decatur, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The defendant was sentenced to 57 months in prison for being a felon in possession of a gun in violation of 18 U.S.C. § 922(g)(1). He claims that the gun was seized in violation of the Fourth Amendment and should therefore not have been used as evidence (the essential evidence) against him. The seizure came about in the following way. One afternoon a uniformed police officer on patrol in his car in Decatur, Illinois received a message from his dispatcher conveying an anonymous tip that at the corner of Main and Calhoun Streets was a black man wearing a tan shirt and tan shorts who had a gun in his waistband. The officer drove to the corner of those streets and, sure enough, there was a black man wearing a tan shirt and tan shorts. The gun was not visible. The officer stopped his car near where the man was standing, got out, walked toward him, and told him he wanted to talk to him. We do not know how far he was from the man when he first spoke—the officer testified that it was about twelve feet but the judge made no finding—or what exactly he said. According to testimony by the officer that the district judge at the suppression hearing was entitled to and did believe, the man—DeBerry—took several steps backward, turned slightly to the side, and moved his hands as if he might be about to draw a gun. The officer then drew his own gun and ordered DeBerry to place his hands on the hood of the police car. When DeBerry complied, the officer holstered his gun. A backup officer arrived within two minutes, and the first officer then patted down DeBerry and found the gun. They then arrested him.

■ DeBerry argues that the police did not have probable cause to arrest him until they found the gun, and therefore the seizure of the gun was unlawful. The premise is correct, but not the conclusion. We may assume without having to decide that the combination of an anonymous tip that a man has a gun and an ambiguous gesture by him ominous only because of the tip does not create a sufficiently high probability that he is in fact carrying a gun to justify an arrest. But the tip and the gesture certainly justify the officer in drawing his own gun and detaining the gesturer until it can be determined whether in fact he has a gun. *United States v. Gibson,* 64 F.3d 617, 623–24 (11th Cir.1995). Self-defense is the original rationale of the *Terry* stop (that is, a stop and frisk) and still the most compelling justification for it. This is why the pointing of a gun at the person stopped does not transform a stop into an arrest, *United States v. Vega,* 72 F.3d 507, 515 (7th Cir.1995); *United States v. Tilmon,* 19 F.3d 1221, 1226–28 (7th Cir.1994); *United States v. Serna–Barreto,* 842 F.2d 965, 967–68 (7th Cir.1988), if in the circumstances (as here, unlike the circumstances of *United States v. Novak,* 870 F.2d 1345, 1351–53 (7th Cir.1989)) the pointing of the gun is a prudent measure of self-protection; and remember that the officer quickly returned his gun to its holster. No doubt at some point DeBerry's forced immobilization with his hands on the hood of the police cruiser would have turned the stop into an arrest, *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), because it is the brevity of the stop that makes it tolerable even though the police lack probable cause to believe that the person stopped has committed a crime. But two minutes is not that point. Twenty minutes was held not too long in *Sharpe, id.* at 686, 105 S.Ct. at 1575–76, and we recently upheld a *Terry* stop that lasted 62 minutes. *United States v. Vega, supra,* 72 F.3d at 515–16.

■ The question becomes whether the officer was entitled to accost DeBerry, for if so the *Terry* stop was justified by the ominous-seeming gesture with which DeBerry replied to the officer's hailing of him. DeBerry would have us treat the hailing itself as the stop, and he argues that an anonymous tip does not create the articulable suspicion required to justify a stop. The first half of this submission is wrong, and the second dubious. At least as far as the Fourth Amendment is concerned, police do not have to have *any* degree of reasonable suspicion in order to accost a person and say they want to talk to him. *Florida v. Royer,*

460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Rodriguez,* 69 F.3d 136, 141 (7th Cir.1995); *United States v. Serna–Barreto, supra,* 842 F.2d at 966. The "reason" for this rule, if it can be called a reason, is that the mere accosting of a person is not a search or seizure of him, and so is not within the amendment's scope. This seems a little feeble, since very few people think themselves free not to stop if a policeman accosts them. But the law is well established that if the officer asks rather than commands, the person accosted is not seized, and so the protections of the Fourth Amendment do not attach.

■ It is not altogether clear whether the officer in this case asked or commanded, but even if it was the latter, transforming the encounter into a *Terry* stop requiring articulable suspicion to be lawful, there was no violation of the Fourth Amendment. It is true that an anonymous tip, considered wholly without regard to its content or context, is not deemed an adequate basis for a *Terry* stop. *United States v. Packer,* 15 F.3d 654, 659 (7th Cir.1994); *United States v. Walker,* 7 F.3d 26, 30 (2d Cir.1993). And to deem the tip adequately corroborated by circumstances that, as in this case, show nothing more than that the tipster had seen the person he was reporting would be mere bootstrapping, for the tipster could easily be a prankster who seeing a perfectly innocent-looking person in the street calls up the police and describes the location and appearance of the person. *United States v. McLeroy,* 584 F.2d 746, 748 (5th Cir.1978); cf. *Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). It is different if the details that are given by the tipster and that the police corroborate before making the stop are details that only someone personally acquainted with the suspect would know. *Id.* at 332, 110 S.Ct. at 2417; *United States v. Walker, supra,* 7 F.3d at 30. There is still a chance that the tip is a lie—the tipster may be a personal enemy of the person he is reporting—but the probability is sufficiently low to permit the police to stop the person reported on the basis of the tip. But that is not our case. Anyone who saw DeBerry, whether or not he knew him, might have supplied the tip.

But a number of cases hold, *United States v. McClinnhan,* 660 F.2d 500, 502–03 (D.C.Cir.1981); *United States v. Clipper,* 973 F.2d 944, 949–51 (D.C.Cir.1992); *United States v. Bold,* 19 F.3d 99, 103–04 (2d Cir. 1994), or intimate, *United States v. Gibson, supra,* 64 F.3d at 624; *United States v. Walker, supra,* that if the tip, though only weakly corroborated in the sense just explained, is that a person is armed, the police are entitled to stop the person and search him for the gun. Armed persons are so dangerous to the peace of the community that the police should not be forbidden to follow up a tip that a person is armed, and as a realistic matter this will require a stop in all cases. For suppose DeBerry had made no threatening gesture but had simply denied in answer to the officer's question that he had a gun. Could the officer have left it at that? Or should he have asked for consent to frisk DeBerry and if DeBerry refused, insisted? The answers implicitly given by the cases we have cited are "no" and "yes," respectively. We think these answers strike the proper balance between the right of the people to be let alone and their right to be protected from armed predators.

We have assumed—everyone connected with the case has assumed—that the police, who did not know DeBerry's name and therefore did not know that he was a felon, knew, or at least had reason to believe, that if he was carrying a concealed firearm he was violating the law. They did know. It is a crime in Illinois to carry a concealed gun, 720 ILCS 5/24–1(a)(10), with the usual exceptions for peace officers and the like (720 ILCS 5/24–2), exceptions unlikely to be applicable to DeBerry. Even if this were Texas rather than Illinois, and carrying a concealed weapon was lawful except for felons and a few other classes of ineligibles, the police would have been entitled to accost DeBerry and ask him whether he was carrying a gun. They might have a hunch he was a felon and so violating the law. It would not matter, so far as the Fourth Amendment is concerned, as we explained earlier. But if the asking crossed over to commanding, so that DeBer-

ry was stopped, then it would be essential that the officers have a reasonable belief and not a mere hunch that if he was carrying a gun he was violating the law. But they would have a reasonable belief, because this is Illinois rather than Texas.

AFFIRMED.

DIANE P. WOOD, Circuit Judge, concurring.

I agree that the key question here is whether the officer was entitled in the first instance to accost DeBerry, because the degree of threat that DeBerry's gestures posed when the officer hailed him is a question of fact that the district judge resolved against DeBerry. The anonymous tip offered little to distinguish DeBerry from any other citizen on the street, and the Court rightly recognizes the danger of bootstrapping when a prankster calls the police and describes the location and appearance of a person accurately. If the Fourth Amendment was designed to protect against anything, it was designed to protect against the "general warrant," which freed the holder of the warrant from the limitations of the common law of trespass and barred any trespass suit by the target of an unreasonable search. See *Vernonia School District 47J v. Acton,* — U.S. —, —, 115 S.Ct. 2386, 2397, 132 L.Ed.2d 564 (1995) (O'Connor, J., dissenting); *United States v. Jones,* 54 F.3d 1285, 1289–90 (7th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 263, 133 L.Ed.2d 186 (1995). *See also* Akhil Reed Amar, *Fourth Amendment First Principles,* 107 Harv.L.Rev. 757, 771–81 (1995); William J. Stuntz, *The Substantive Origins of Criminal Procedure,* 105 Yale L.J. 393 (1995).

The only fact that saves the officer's stop of DeBerry, in my opinion, is the fact that it is unlawful in Illinois to carry a concealed weapon. The tipster informed the police that DeBerry was armed, and it appears from the facts before us that the weapon was not in plain view. I do not agree that this case would necessarily come out the same way if Illinois law, like the law of many states, authorized the carrying of concealed weapons. At that point, the entire content of the anonymous tip would be a physical descrip-

tion of the individual, his location, and an allegation that he was carrying something lawful (a cellular telephone? a beeper? a firearm?). This kind of nonincriminatory allegation, in my view, would not be enough to justify the kind of investigatory stop that took place here. It would mean, in states that permit carrying concealed weapons, that the police no longer need any reason to stop citizens on the street to search them. However, we do not have that situation. Because I therefore consider the Court's comments on lawful concealed weapons to be dicta, I concur in the result reached today.