**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John E. BLAIR, Defendant–Appellant.**

No. 01–10033–01.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 2001.

Decided Jan. 8, 2002.

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

**ORDER**

John Blair pleaded guilty to one count of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and was sentenced to 180 months' imprisonment. In pleading guilty Blair reserved the right to appeal the district court's ruling on his motion to

suppress evidence. Blair argued that the police did not have reasonable suspicion to conduct an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court denied the motion, and we affirm.

On May 7, 2000, the Peoria Police Department received within the span of six minutes four independent telephone calls reporting shots fired in an area on Starr Street near the Home Run Mart. The first call came from an anonymous female who reported hearing shots fired near Griswold and the Starr Street Market. The second call came from a different anonymous female calling from the parking lot of the Home Run Mart. This caller reported a shooting on Starr Street and that the shooters had pulled into the parking lot from where she was calling. She identified the shooters' car as a green Camaro with license plate C809630. This caller further identified the shooters as a white male with blond hair and a mustache and a black male with thick glasses and a white shirt. The third call came from an anonymous male calling from a private residence on Starr Street who reported shots fired on Starr Street. The fourth call came from Jamal Zeid, owner of the Home Run Mart, who reported a shooting in the parking lot. All four calls were recorded and transcribed. After the first call officers were dispatched to the scene; information from the subsequent calls was relayed to the officers en route.

Officer Faulkner, the first to arrive at the scene, observed a green Camaro in the parking lot of the Home Run Mart. The license plate and the car's two occupants matched the descriptions given by the second caller. As Faulkner approached the Camaro, a man later identified as Blair attempted to exit from the passenger side. Faulkner told Blair to stay in the vehicle. Faulkner observed Blair "attempt to go into his pocket." At this point a second officer on the scene, Officer Terry, approached the car from the driver's side. Terry observed Blair "attempt to cup something in his pocket." Faulkner told Blair to keep his hands up, pulled him out of the car, patted him down, and felt a gun in his right front pocket. Faulkner then handcuffed Blair and removed a .25 caliber handgun from his pocket. Blair and the driver were arrested and informed of their rights.

Blair moved to suppress the gun, arguing that the phone calls did not provide the officers with the reasonable suspicion necessary to conduct an investigative stop and frisk. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court denied the motion to suppress, concluding that the telephone calls provided the officers with reasonable suspicion. Blair argues on appeal that the initial stop violated the Fourth Amendment based on the Supreme Court's recent pronouncements in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). We review *de novo* whether there was reasonable suspicion to justify the stop. *See United States v. Johnson*, 170 F.3d 708, 712–13 (7th Cir.1999).

In *J.L.*, the Supreme Court held that an anonymous tip that a young black male at a particular bus stop and wearing particular clothing possessed a firearm lacked "sufficient indicia of reliability" to establish reasonable suspicion. *J.L.*, 529 U.S. at 268, 274. The *indicia of reliability* and reasonableness of the search must be measured by what the officers knew before they conducted the search. *See id.* at 271. The Court explained that anonymous tips are less reliable because when nothing is known about an informant authorities cannot assess the informant's reputation or hold the informant responsible if the tip turns out to be fabricated. *See id.* at 270. The Court also emphasized that there was no notation, recording, or tracing of the

anonymous tip in *J.L. See id.* at 268. The tip at issue was a bare, undocumented report, by an unknown (and therefore unaccountable) informant who did not explain how he obtained the information. *See id.* at 271. For these reasons, the Court held that the officers lacked reasonable suspicion to stop the defendant. *See id.* at 274.

Blair argues that his situation is analogous because telephone reports to the police provided the basis for the stop. Blair's situation, however, is distinguishable. First, the police in this case received four tips, not one, and all from different individuals, calling from different locations, within the same general area, and all reporting shots fired. The presence of four independent calls repeating similar information made the information more reliable than one uncorroborated, anonymous tip. Second, unlike in *J.L.*, here the calls were all recorded, transcribed, and traced. One call was not anonymous; it came from the Home Run Mart's owner, calling from the store. Another call came from the store's parking lot; a third call came from a private residence in the area. The recording, transcribing, and tracing of these calls provides the indicia of reliability that was lacking in *J.L.* The officers in this case, therefore, had reason to believe the information was reliable.

Blair further argues that, even if the officers has sufficient information to believe that shots were fired in the area, the officers did not have reasonable suspicion to stop him. Specifically, Blair contends that the physical descriptions of the shooters and their car did not establish reasonable suspicion because, much like *J.L.*, the tip was anonymous and did not reveal how the caller obtained the information. We disagree. The second caller phoned from the Home Run Mart parking lot where she reported that a shooting had just occurred and that she was watching the shooters in their car. In these emergency circumstances, the police had sufficient information to believe that a shooting had just occurred and that the caller who described the shooters was phoning from the crime's location. Moreover, the fact that Blair gestured toward his pocket when the officers approached the car provided the officers with even more justification for searching him. *See United States v. DeBerry*, 76 F.3d 884, 885 (7th Cir.1996) (explaining that self-defense of officers is the primary rationale for *Terry* stops).

Finally, Blair also argues that 18 U.S.C. § 922(g)(1) is unconstitutional because it exceeds Congress' Commerce Clause authority, but we have already rejected that argument. *See United States v. Wesela*, 223 F.3d 656, 659–60 (7th Cir. 2000).

Accordingly, the judgment of the district court is AFFIRMED.