UNITED STATES of America, Plaintiff,

v.

**Wendell COPELAND, Defendant.**

No. NA 01–04–CR–01–B/N.

United States District Court, S.D. Indiana, New Albany Division.

May 15, 2001.

Armand Judah, Louisville, KY, for Defendant.

### ENTRY DENYING DEFENDANT'S MOTION TO SUPPRESS

BARKER, District Judge.

On February 14, 2001, Defendant Wendell Copeland was charged with knowingly and intentionally possessing with intent to distribute three grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[1] Defendant filed a Motion to Suppress, and a hearing was held on this motion on May 8, 2001. For the reasons set forth below, Defendant's Motion to Suppress is *DENIED.*

*Factual Background*

*The Tip*

The controversy in this case surrounds the tip from a confidential informant cited by Detective Leslie Kenneth Kavanaugh, of the Jeffersonville City Police Department, as prompting the stop of the car in which Copeland was traveling. The information below comes from the affidavit of Paul J. Meyer, Special Agent with the Federal Bureau of Investigations and from the testimony of Kavanaugh and other police officers at the hearing.

Kavanaugh stated that at 3:30 p.m. on January 21, 2001, a confidential informant advised Kavanaugh that Copeland was in the Jeffersonville area. Meyer Aff., ¶ 2(a). At the hearing, Kavanaugh testified that he had received reliable tips from this confidential informant on earlier occasions. Kavanaugh's interest in Copeland's whereabouts arose through Kavanaugh's work in the Jeffersonville City Police Department and in the Southern Indiana Drug Task

John Dowd, Indianapolis, IN, for Plaintiff.

1. Since this indictment, a grand jury has returned a superseding indictment against Wendell Copeland charging other drug offenses not arising out of the events at issue here.

Force. According to the testimony of Richard O. Sowder, Detective Sargent in the New Albany Police Department, Detective Higdon of the police department, at Sowder's instruction, created a "wanted flier" featuring Copeland. This flier, entered as Prosecution's Exhibit 3 at the hearing, consists of a color picture of Copeland, a physical description of him, a warning that Copeland is "CONSIDERED ARMED AND DANGEROUS" in bold, red, all-caps print, and the information that Copeland was wanted for battery, possession of a handgun without a permit, and criminal recklessness.[2] Sowder testified that he ordered the production of the wanted flier following the issuance of a bench warrant for Copeland's arrest on December 5, 2000. He also stated that the flier was not disseminated to the Jeffersonville City Police Department, which is Kavanaugh's employer. Nonetheless, Kavanaugh testified that he saw the flier concerning Copeland at the end of the year 2000 and early in the year 2001. Kavanaugh stated that as a member of the Southern Indiana Drug Task Force he was often in the offices of the New Albany Police Department where he had occasion to see such fliers. Kavanaugh further stated that he discussed that Copeland was wanted by the New Albany Police Department with Detectives Higdon and Humphries.

The confidential informant reportedly told Kavanaugh that Copeland would be traveling in the Allison Lane area of Jeffersonville with two other black males in a white Ford, four-door automobile with tinted windows. Meyer Aff., ¶ 2(a). The tipster did not report the identity of the third black male[3] in the vehicle but did inform Kavanaugh that, in addition to Copeland, David Valentine would be driving the car. *Id.* Kavanaugh testified that he was familiar with Valentine's appearance because they work out at the same gym.

*The Stop and the Search*

Acting on this tip, minutes later, at approximately 3:35 p.m., Kavanaugh spotted a white Ford, four-door car with tinted windows heading north on Allison Lane near the local high school. He testified that he recognized the driver of the vehicle as Valentine. Kavanaugh explained that while the Ford had tinted windows, the tint was not so dark as to make seeing into the car impossible. In addition, both he and Officer Dan Lawhorn testified that the front windshield was not tinted. At that point, Kavanaugh turned his car around to follow the white Ford, which then proceeded to 10th Street and began heading westbound. Kavanaugh requested confirmation from Floyd County law enforcement that Copeland remained subject to a valid arrest warrant.[4] Kavanaugh then testified that he radioed for help in stopping the car because he was not in uniform and was driving an unmarked car and because Copeland was believed to be armed and dangerous. Uniformed Officers Mark Doherty and Lawhorn responded to Kavanaugh's request for assistance, traveling to the intersection of 10th Street and Plank Road, where they effected the stop in two

---

**2.** The original of the flier, entered into evidence, has an "x" drawn through the picture of Copeland with the notation "captured" next to it. Sowder testified that the notation was added subsequent to Copeland's arrest on January 21, 2001. The defense raised no objection to Sowder's representation.

**3.** This occupant was later identified as Antonio Smith. A check of his criminal history revealed that Smith had an outstanding warrant for his arrest for felony murder in Milwaukee, Wisconsin. Meyer Aff., ¶ 2(i).

**4.** Kavanaugh testified that this information was not confirmed by Floyd County law enforcement until after Copeland's arrest on January 21, 2001.

separate marked cars. Detective Kavanaugh approached the white Ford from behind in his unmarked car.

At this point the officers exited their respective vehicles with their guns drawn. Lawhorn approached the car on the driver's side. Doherty stationed himself on the passenger side of the car. The occupants of the car were ordered to show their hands. According to Doherty's testimony, Doherty opened the front passenger-side door where Copeland was sitting and waited for Kavanaugh to approach from the rear of the car. Doherty then checked the identification of Copeland. During this time, Lawhorn removed Valentine from the driver's side of the car and secured him with handcuffs at the rear of the car. At first, Copeland put his hands on the front dashboard as the officers had ordered. However, Kavanaugh and Doherty testified that Copeland removed his right hand from the dashboard and placed it in his crotch area so that his hand was not visible to the law enforcement officials. Copeland was ordered again to put his hands on the dashboard. At that point, Kavanaugh saw a handgun on the right side of the front floor board between the seat and the door, and Doherty removed Copeland from the car.[5] The officers conducted a pat-down of Copeland, which revealed that Defendant was wearing a ballistic body armor vest. They removed Copeland to the rear of the car. Defendant Kavanaugh also removed Smith from the back passenger-side seat. A search of the car revealed cocaine on the floorboard of the front passenger side of the car, slightly to the left of where Copeland had been sitting.[6] The cocaine was packaged in plastic baggies inside a larger plastic bag. The occupants of the car were placed under arrest and taken to the Clark County Jail.

*Analysis of the Motion to Suppress*

■ Defendant moved to suppress all evidence obtained during the course of his arrest on the ground that the stop of the vehicle was not supported by probable cause. Memo. of Law in Support of Mot. to Suppress at unnumbered 3. This argument is a sloppy statement of the law. Under *Terry v. Ohio*, 392 U.S. 1, 21 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "a police officer can stop and briefly detain a person for investigative purposes if the officer has a *reasonable suspicion* supported by articulable facts that criminal activity is afoot." *United States v. Price*, 184 F.3d 637, 640 (7th Cir.1999) (emphasis added).[7] Contrary to Defendant's assertion, "fair probability" that the person stopped has committed a crime is not needed because the probable cause doctrine is not applicable here. *See United States v. Raibley*, 243 F.3d 1069, 1073–74 (7th Cir.2001) (citations omitted). Instead, an investigatory stop is justified under the doctrine of reasonable suspicion if there is "some objective manifestation" that the person stopped is engaged in criminal activity. *Price*, 184 F.3d at 640 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). With this clearer understanding of the relevant law, we look to determine whether the officers stopping Copeland reasonably suspected that Copeland had committed a crime.

Defendant contends that the stop was unconstitutional because the confidential

---

**5.** The handgun was later identified as a loaded .380 caliber Lorcin.

**6.** The officers also found a small quantity of marijuana and a loaded 9mm Taurus in the car. None of the charges against Copeland relate to these items.

**7.** Contrary to defense argument at the hearing, *Terry* permits the stop of persons in cars, not just persons on foot, on the basis of reasonable suspicion. *See, e.g., Price,* 184 F.3d at 641 (applying *Terry* to stop of defendant who had been vehicle passenger).

tip at issue was not sufficient to provoke reasonable suspicion. Memo. in Support of Mot. to Suppress at unnumbered 3. While a confidential tip on its own may not meet this burden, Defendant's argument here is ultimately unpersuasive. A recent Supreme Court decision certainly has made it more difficult for courts in the Seventh Circuit to find that a confidential tip supports reasonable suspicion than it had been prior to the high court's ruling. *Florida v. J.L.*, 529 U.S. 266, 269, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (calling into doubt *United States v. DeBerry*, 76 F.3d 884, 886–87 (7th Cir.1996), Seventh Circuit precedent using "bareboned" anonymous tip to justify stop). Yet, *Florida v. J.L.*, 529 U.S. at 270, 120 S.Ct. 1375 (quoting *Alabama v. White*, 496 U.S. 325, 327, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)), continues to recognize that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to make the investigatory stop.'"

The crucial indication of reliability in this case is that Kavanaugh was personally aware of at least some criminal activity being committed by Copeland.[8] Namely, Kavanaugh knew Copeland personally and believed that a warrant had been issued for his arrest. In addition, Kavanaugh had information warning him that Copeland was considered to be armed and dangerous. Considering that the objective reasonableness of official suspicion must be measured by all that the officer knew before initiating the stop, *United States v. Swift*, 220 F.3d 502, 506 (7th Cir.2000), not just by what the officer learned from the confidential informant, the stop at issue

here is constitutional as along as the wanted flier issued by the New Albany Police Department and seen by Kavanaugh was adequate to create a reasonable suspicion that Copeland had engaged in criminal activity.

The wanted flier was sufficient. In *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Supreme Court upheld the conviction of a defendant who had been stopped on the basis of a flier issued by one police department notifying other law enforcement officials that the defendant was wanted for the investigation of an aggravated robbery. The high court reasoned that reliance on a wanted flier justifies an investigative stop as long as the flier "has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense." *Id.* Here, Kavanaugh's reliance on the wanted flier concerning Copeland provides an even stronger basis for Kavanaugh's reasonable suspicion of Defendant. In this case, the wanted flier was based on a warrant for the arrest of Copeland, rather than only on reasonable suspicion that the wanted person had committed an offense as in *Hensley*. *See* Prosecution's Ex. 2 (Floyd County Arrest Warrant for Wendell Copeland). Because Kavanaugh's reliance on the wanted flier issued by the New Albany Police Department on the basis of a Floyd County arrest warrant was reasonable, once Kavanaugh observed a car fitting the description of the vehicle in which the confidential informant said Copeland could be found, Kavanaugh had

---

**8.** At the hearing, the government's counsel argued, citing *Florida v. J.L.*, 529 U.S. at 270–71, 120 S.Ct. 1375, that the tip was reliable because it provided "predictive information" about the movements of the person who was stopped. Because the Court finds the stop constitutional on other grounds, we need not decide whether a tip received at 3:30 p.m.

and accurately "predicting" Defendant's location at 3:35 p.m. qualifies as "predictive information" as contemplated by the Supreme Court. *Florida v. J.L.*, 529 U.S. at 270–71, 120 S.Ct. 1375, ultimately rejected as "contemporaneous" a tip describing the defendant's whereabouts in a manner similar to that here.

reasonable suspicion to make the stop. *See also United States v. Allen*, 235 F.3d 482, 488 (10th Cir.2000) (when arresting officer already had warrant for defendant's arrest, tip concerning only identity and whereabouts of defendant was sufficiently corroborated by officer's observation of car described by informant at location described by informant to justify arrest).

The remainder of the activities on January 21, 2001 also do not require us to suppress the evidence collected. The pat-down search that revealed the ballistic body armor vest was justified because, as explained above, there was "reasonable suspicion of criminal activity" and because there were "specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or others." *United States v. Brown*, 188 F.3d 860, 864 (7th Cir.1999) (citing *Terry*, 392 U.S. at 26–27, 88 S.Ct. 1868). At the time of the pat-down search, Kavanaugh reasonably believed Copeland was subject to an arrest warrant, had seen a handgun on the front passenger side of the car's floorboard, and had witnessed Copeland's refusal to keep his hands in the view of the officers. The arrest of Copeland was similarly justified. Finally, under *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the subsequent search of the vehicle is constitutional because it is a search incident to the lawful custodial arrest of one of the occupants of the vehicle.

### Conclusion

For the reasons explained above, Defendant's Motion to Suppress is *DENIED*.