*818 OPINION OF THE COURT
Anne G. Feldman, J.
Defendant was convicted after a jury trial of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the second degree. On November 25, 1996, defendant was sentenced as a second felony offender to consecutive terms of imprisonment of 25 years to life for the murder count, I2V2 to 25 years for the attempted murder and 2 to 4 years for the weapon count. Defendant’s conviction was affirmed by the Appellate Division, Second Department (People v Breazil, 269 AD2d 537 [2d Dept 2000]), and leave to appeal to the Court of Appeals was denied (People v Breazil, 95 NY2d 851 [2000]). Defendant has also submitted an application for a federal writ of habeas corpus that is presently pending.* Defendant now moves pursuant to CPL 440.10 to vacate the judgment of conviction on the grounds that an anonymous 911 call did not supply reasonable suspicion for an investigatory stop by the police and that defense counsel had rendered ineffective assistance at trial.
With respect to the first arm of his motion, defendant claims the stop and frisk of him by the police was unconstitutional under Florida v J.L. (529 US 266 [2000]). Defendant contends that he is entitled to the benefit of the rule enunciated in J.L. (supra) because although the decision was rendered after his conviction became final, it should be applied retroactively to suppress the weapon seized in his case.
On July 17, 1995, the police received an anonymous tip of a robbery that included a description of approximately six black males on bicycles, one of whom was wearing all white clothing. Defendant, who was wearing white clothing, was stopped and frisked by the police. After a handgun and a quantity of crack cocaine were recovered from his person defendant was arrested. Subsequently defendant was identified as the perpetrator of a homicide involving that same handgun.
In Florida v J.L. (supra), an anonymous caller reported that a young man in a plaid shirt, standing at a bus stop, was carrying a gun. Based on that description the police stopped and frisked J.L. and seized a gun from one of his pockets. In unanimously affirming the state court’s decision to hold the search invalid and to suppress the gun, the Supreme Court held that without corroborating information of criminal conduct such an anonymous tip was insufficient to justify an investiga *819 tory stop because it lacked the requisite indicia of reliability and failed to provide “predictive” information upon which the police could test the informant’s knowledge or credibility. (Id. at 271.)
The retroactive application of constitutional rules governing criminal procedure to a case on collateral review depends in large part on whether the rule is characterized as “new” or “old” (People v Eastman, 85 NY2d 265, 275). A decision by the Supreme Court applying a well-established constitutional principle to a new set of circumstances is considered an application of an “old” rule and is generally applied retroactively on collateral review (id.; Yates v Aiken, 484 US 211, 216). “This retrospective application reflects the development and refinement of constitutional principles over time.” (People v Eastman, supra at 275.)
A “new” rule “breaks new ground,” “imposes a new obligation on the States or the Federal Government,” or “was not dictated by precedent existing at the time the defendant’s conviction became final.” (Teague v Lane, 489 US 288, 301 [1989].) A decision announces a new rule if it is contrary to earlier “reasonable, good-faith interpretations of existing precedents” by lower federal or state courts (Butler v McKellar, 494 US 407, 414 [1990]). “[T]he fact that a court says its decision was within the logical compass’ of an earlier decision * * * is not conclusive for purposes of deciding whether [it] is a ‘new rule’ under Teague” (id. at 415). While a case applies an old rule if its holding is “compelled” by precedent (Sawyer v Smith, 497 US 227 [1990]), it puts forth a new rule when its outcome was “susceptible to debate among reasonable minds,” or a contrary result would have been “an illogical or even a grudging application” of prior precedent (Butler at 415-416).
Under these guidelines J.L. announced a new rule. That the outcome of the case was debatable and not predetermined by precedent is reflected in the contrary conclusion reached by courts on the precise legal issue subsequently resolved by J.L. In People v Benjamin (51 NY2d 267 [1980]) and People v Salaman (71 NY2d 869 [1988]), the Court of Appeals held that an anonymous description of particularity and accuracy was sufficient to permit a Terry stop. Federal courts also reached conclusions contrary to J.L. (see, United States v Bold, 19 F3d 99, 102-103 [2d Cir 1994]; United States v DeBerry, 76 F3d 884, 886 [7th Cir 1996]; United States v Clipper, 973 F2d 944 [DC Cir 1992]).
Generally, a new rule is not to be applied retroactively to convictions already final unless the new rule falls within one of *820 two narrow exceptions recognized in Teague. The first is applicable when the new rule places “certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe” (People v Eastman, supra at 265 [internal quotation marks omitted], quoting Teague v Lane, supra at 311-312). Clearly a homicide, the proscribed conduct here, does not fall within this exception.
The second Teague exception applies “where the new rule alters a bedrock procedural element of criminal procedure which implicates the fundamental fairness and accuracy of the trial” (id.). The Supreme Court has emphasized “that the exception is exceedingly narrow, applying ‘only to a small core of rules requiring observance of those procedures that * * * are implicit in the concept of ordered liberty’ ” (United States v Mandanici, 205 F3d 519, 528 [2d Cir 2000], quoting Graham v Collins, 506 US 461, 478). The new rule must be a “watershed rule” which the Supreme Court found best exemplified by the “sweeping rulé” established in Gideon v Wainwright (372 US 335; O’Dell v Netherland, 521 US 151, 167 [1997]). The rule of J.L. is not the “watershed rule” contemplated by the second Teague exception. Hence, J.L. is not to be applied retroactively and is therefore inapplicable on collateral review.
In the second arm of his motion defendant claims that his attorney was ineffective for failing to interview and call as a witness Elenora Carter who made two inconsistent sworn statements about the crime under oath to the District Attorney. “The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial” (People v Claudio, 83 NY2d 76, 80, quoting United States v Cronic, 466 US 648, 658). “So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met.” (People v Baldi, 54 NY2d 137, 147.) Counsel’s performance must not be second-guessed with the benefit and clarity of hindsight (People v Satterfield, 66 NY2d 796, 799), and the reviewing court must avoid confusing true ineffectiveness with losing tactics (People v Baldi, supra at 146). Rather, “it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanation” for counsel’s conduct (People v Rivera, 71 NY2d 705, 709), and overcome the strong presumption that counsel’s performance was within the broad range of reasonable professional competence. (Strickland v *821 Washington, 466 US 668, 689.) “As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessfully, it will not fall to the level of ineffective assistance [of counsel].” (People v Benevento, 91 NY2d 708, 712-713.)
On its face the failure of defense counsel to call Elenora Carter as a witness does not constitute ineffective assistance of counsel. She recorded two contradictory statements within one hour, the second of which inculpated defendant. Defendant has failed to demonstrate that his attorney had no strategic or otherwise legitimate explanation for his failure to call her as a witness.
Accordingly, defendant’s motion is denied in its entirety.

 Awaiting decision by the state courts on the instant motion.