OPINION OF THE COURT
Guy J. Mangano, J.
The defendant stands convicted of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the second degree. He is currently serving consecutive sentences of 25 years to life on the murder count, I2V2 to 25 years on the attempted murder count and 2 to 4 years for the weapons possession count (Feldman, J., at trial and sentence).
The issue in this matter involves the sufficiency of the information the police had to support the stop and arrest of defendant and brings into play the law enunciated by the United States Supreme Court in Florida v J.L. (529 US 266 [2000]). In that case, the Supreme Court held that a stop and frisk conducted on the basis of an anonymous report that there was an individual with a concealed firearm at a specified location was illegal. The Court stated that “the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]” was insufficient to justify a stop (id. at 271; see also People v Folk, 284 AD2d 476 [2001]).
Procedural History
By memorandum decision and order dated February 22, 2000, the Appellate Division, Second Department, affirmed the judgment of conviction (People v Breazil, 269 AD2d 537 [2000]). Defendant’s application for leave to appeal to the Court of Appeals was subsequently denied (People v Breazil, 95 NY2d 851 [2000]). By pro se motion dated May 21, 2001, defendant moved to vacate the judgment of conviction pursuant to CPL 440.10 on the ground that the police did not have reasonable suspicion to stop and frisk defendant based solely on an anonymous tip and that defendant was deprived of effective assistance of trial counsel. The motion to vacate the judgment was denied (People v Breazil, 191 Misc 2d 817 [2002, Feldman, J.]). A justice of the Appellate Division, Second Department (Townes, J.), granted defendant’s application for leave to appeal. By order dated January 24, 2006, the Appellate Division affirmed the Supreme *495 Court’s order denying vacatur of the judgment of conviction (People v Breazil, 25 AD3d 719 [2006]).[1] Defendant then moved to reargue the Appellate Division’s order, and, by order dated July 5, 2006, the Appellate Division, Second Department, granted the motion to reargue, and, upon reargument, recalled and vacated the January 24, 2006 order (People v Breazil, 31 AD3d 461 [2006]).[2] The final order stated that “the People should be afforded an opportunity, at a new suppression hearing, to show that the police conduct was lawful.” (Id. at 462.) More specifically, the Appellate Division ordered the new hearing since “[a]t the original suppression hearing, the question of the source of the information provided by an unidentified caller to the police and the question of when the police learned of the complainant’s existence was not explored” (id.). Thus, a Dunaway/Mapp hearing was ordered and held. Given the circumstances of this case, this court not only granted the People the opportunity to present evidence as to the identity of the 911 caller, but, over the objection of defense counsel, to reopen the hearing in its entirety (see People v Crandall, 69 NY2d 459 [1987]). The People called three witnesses: retired New York City Police Officer Kurt Twining, Detective David Gross and New York State Division of Parole Supervisor William McCarthy.
Findings of Fact
On July 17, 1995, New York City Police Officers Kurt Twining and David Gross were on routine patrol in a marked police vehicle. At approximately 2:23 a.m., they received a radio transmission of “six males robbing one male, one male with a gun wearing all white, second male wearing number three jersey on *496 a bike in front of 24-hour deli store.” The description was provided by an anonymous 911 caller and the officers proceeded to the intersection of Franklin Avenue and Fulton Street. As the officers neared the subject intersection, Officer Twining observed “the suspect on a bicycle on the sidewalk, heading eastbound on Fulton Street, going towards Franklin, and they were on the south side of the street, and it was a male black wearing a white tee-shirt and he was on a bike.”[3] The officers exited the vehicle and approached the suspect, defendant herein, placed him against a wall and patted down his outer clothing. Officer Twining observed a fanny pack around defendant’s waist which felt like it contained a weapon. Further examination in fact revealed a loaded firearm. Defendant was then handcuffed and placed under arrest. Detective Gross searched defendant and recovered a quantity of crack cocaine. At a showup at the scene of the arrest, defendant was not identified as one of the participants of the robbery.
Unbeknownst to Officers Twining and Gross at the time of the stop and arrest, defendant was wanted for a parole violation since March 29, 1995. According to the People, on May 22, 1995, the police suspected defendant in the murder of McKiever Kinard and the attempted murder of Wendell Porter which occurred on May 15, 1995, and which was unrelated to the robbery described by the 911 caller. Thereafter, on July 18, 1995, the deteqtive investigating the murder learned that the firearm recovered from defendant matched the ballistics evidence recovered from that crime. Later that day, defendant was placed in a lineup where he was identified as the person who shot and killed McKiever Kinard.
In support of the instant motion to suppress the arrest evidence, the weapon and the subsequent lineup, defense counsel argues that the stop of defendant was illegal since it was based solely on an anonymous tip. The People maintain, on the other hand, that defendant riding a bicycle on the sidewalk gave the police the right to stop him and the right to frisk defendant based upon a reasonable fear for their safety. Moreover, the People contend that the police were justified in relying upon the parole warrant despite being unaware of the warrant at the time of the stop.
*497 Conclusions of Law
Dunaway and Mapp Issues
The law is clear that the police may not stop and frisk a citizen based solely upon information of criminal conduct provided from an anonymous source without other “indicia of reliability” (see Florida v J.L., supra at 271; People v Folk, supra; see also People v Moore, 6 NY3d 496 [2006]; People v Heapps, 13 AD3d 107 [2004]). The issue which required clarification pursuant to the order of the Appellate Division, Second Department, was the source of the information provided to the police which led to the stopping of defendant. It is quite evident that the Appellate Division was affording the People an opportunity to relay to the hearing court whether the anonymous tipster was the complainant in the robbery. However, since both police officers who testified at this hearing were unable to provide the identity of the 911 caller, and the People offered no other substantive evidence regarding this fact, this court has no choice but to grant defendant’s motion to suppress the evidence of the arrest, the weapon and the subsequent lineup (see People v Dodt, 61 NY2d 408, 417 [1984] [“Inasmuch as the lineup identification followed directly from the illegal arrest and detention of defendant, it was error to admit evidence of that identification at trial”]). Both police witnesses testified in no uncertain terms that they stopped defendant based solely upon the uncorroborated information provided by an anonymous 911 caller, which is directly in contradiction to the law (see Florida v J.L., supra; People v Folk, supra; see also People v Moore, supra; People v Heapps, supra). Moreover, the description relied upon by the officers did not place defendant on a bicycle, which further dilutes the reliability of the information.
While the People argue that defendant’s illegal conduct of riding a bicycle on a New York City sidewalk could have provided a basis to stop defendant under the theory of a pretextual stop, the People’s mere speculation that the police could have and would have stopped defendant for this conduct is insufficient to cure the tainted police action. Given the record before the court, it strains the bounds of credulity to believe that the aggressive stop and frisk would have occurred for such a minor infraction of the law, especially given the police witnesses’ unequivocal responses to defense counsel’s questions regarding the true reason for the stop.
The same outcome holds true when applying the People’s argument that the open parole warrant justifies this stop. Nei *498 ther officer was aware of the warrant and this court will not extend the “fellow officer” rule to this matter.
“Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting ‘ “upon the direction of or as a result of communication with” ’ a fellow officer or another police agency in possession of information sufficient to constitute probable cause for the arrest” (People v Ketcham, 93 NY2d 416, 419 [1999], quoting People v Mims, 88 NY2d 99, 113 [1996]).
However, the rule presupposes that the information is relayed to the fellow officer (id.; see also People v Landy, 59 NY2d 369 [1983]). There was no evidence at all that the police witnesses were aware of the warrant at the time of the stop. It would be wholly unfair to allow the People to create a pretextual stop or impute the officers with knowledge of an unknown warrant simply because it would erase the tainted source of the information which led to the stop and arrest.
Moreover, to the extent that the People’s argument asserts an issue of “inevitable discovery,” such theory still fails to legitimize this stop and arrest within the confines of constitutional correctness. Inevitable discovery requires “a very high degree of probability that the evidence in question would have been obtained independently of the tainted source” (People v Payton, 45 NY2d 300, 313 [1978], revd 445 US 573 [1980], on remand 51 NY2d 169 [1980]; see also People v Knapp, 52 NY2d 689 [1981]). The record before this court does not present facts which meet this high standard and to legitimize this set of circumstances “would amount to a post hoc rationalization of the initial wrong . . . [and] an unacceptable dilution of the exclusionary rule” (People v Stith, 69 NY2d 313, 319 [1987]). Further, this theory distinguishes between primary evidence, i.e., the firearm, and secondary evidence, i.e., information which links the suspect to the crime, and prohibits the admission of primary evidence “obtained as a direct result of the initial misconduct” (id.).
In view of the foregoing, defendant’s motion is granted and the arrest evidence, the weapon, drugs and the lineup evidence are suppressed.

. In its first order entered January 24, 2006, the Appellate Division found defendant’s argument that the stop violated Florida v J.L. without merit since
“the anonymous 911 caller did not report concealed criminal activity. Instead, the caller reported, inter alia, a robbery in progress at a specified location, to which the police responded within close spatial and temporal proximity, and where they found the defendant matching the sufficiently specific description given by the caller and no one else at the location” (People v Breazil, 25 AD3d at 721).
The Court reasoned that the foregoing gave the tip sufficient reliability.

. In recalling and vacating the January 24, 2006 order, the Court held that the record of the hearing was not clear to determine whether the 911 caller was the complainant of the robbery. The Court noted, however, that “[i]t may be that, as in Florida v J.L. (supra), the police stopped the defendant based upon information provided in a call to 911 by an unidentified caller” (People v Breazil, 31 AD3d at 462).

. The court notes that the description broadcast over the police radio placed the male wearing a jersey on the bicycle, not the male wearing all white.