(November 22, 2011)

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARCOANGEL VARGAS, Respondent. [933 NYS2d 23]—

At a *Mapp/Dunaway* hearing on defendant's motion to suppress the introduction of a switchblade knife into evidence, a police officer testified that while driving in a police van, he made eye contact with defendant, who then turned around and walked in the opposite direction. The officer stated that he then observed, protruding from the coin pocket of defendant's pants, a "brownish, reddish handle with silver around it," that he thought was a knife. He testified that when he subsequently exited the van and moved closer to defendant, he "thought it was a gravity knife." However, he did not explain why.

The officer conceded during testimony that defendant had not done anything suspicious and made no threatening gestures. The officer testified that nevertheless he approached defendant, and without saying anything to him, reached into defendant's pocket and took the knife "for [the officer's own] safety." The officer asked defendant why he had the knife and defendant responded that he "used it for protection." The officer identified the knife as a switchblade by the release button, handcuffed defendant, tested the knife to see if it functioned, and then arrested defendant for possession of an illegal weapon.

The motion court granted defendant's motion to suppress the knife and statement as "fruit[s] of an illegal search." The court reasoned that the officer had no reasonable suspicion of danger of physical injury warranting seizure of the knife.

We affirm, albeit on different grounds in light of recent Court of Appeals decisions. A police officer may stop and frisk an individual if he or she has "reasonable suspicion" that the individual is committing, has committed or is about to commit a crime

(*People v De Bour*, 40 NY2d 210 [1976]). In *People v Brannon* (16 NY3d 596 [2011]), the Court of Appeals addressed the level of knowledge a police officer must possess before he or she has reasonable suspicion to believe an individual possesses an illegal gravity knife, as opposed to a lawful knife, such as a pocketknife. The Court concluded that in order to stop and frisk an individual, the detaining officer must possess "specific and articulable facts from which he or she inferred that the defendant was carrying a gravity knife" (*id.* at 602).

In *People v Fernandez*, decided with *Brannon*, the police officer testified that the clip and "head" of the knife were in plain view and that he knew from experience that gravity knives are typically clipped on the outside of the pocket with the "head" of the knife protruding out of the pocket for easy access (*id.* at 601). From this, the officer inferred that defendant was carrying a gravity knife. The Court found that the officer had reasonable suspicion (*id.* at 602; *see also People v Snovitch*, 56 AD3d 328 [2008], *lv denied* 11 NY3d 930 [2009]).

However, in this case, unlike *Fernandez*, the officer did not articulate any facts at all, much less specific facts from which he could have inferred that the knife was a gravity knife. His sole testimony was that when he moved closer to defendant, he "thought" the object was a gravity knife. Hence, we find that the officer had no reasonable suspicion to stop and frisk defendant, or, as he did here, reach into his pocket and remove the knife. Accordingly, the knife and defendant's statement were properly suppressed (*see Wong Sun v United States*, 371 US 471, 485 [1963]). Concur—Gonzalez, P.J., Tom, Catterson, Moskowitz and Richter, JJ.