OPINION OF THE COURT
Memorandum.
Ordered that the appeal from the order dated August 30, 2010 is dismissed, as that order was superseded by the order dated February 7, 2011; and it is further, ordered that the order dated February 7, 2011, insofar as appealed from, is affirmed.
Defendant, who was charged with two counts of criminal possession of a weapon in the fourth degree (Penal Law § 265.01), one count of unlawful possession of marihuana (Penal Law § 221.05), and driving a motor vehicle with an inoperable stop lamp (Vehicle and Traffic Law § 375 [40]), moved to suppress the physical evidence recovered by the arresting officer as the fruits of an illegal search. At a Mapp hearing (see Mapp v Ohio, 367 US 643 [1961]), Police Officer Demetrios Kekatos testified that he had been a police officer for a little over four years and had made approximately 130 arrests. On November 4, 2009, he was on duty, in plainclothes, with another officer, in an unmarked vehicle, when he observed defendant operating his vehicle with a defective driver’s side brake light. After pulling over defendant’s vehicle, the officers approached the vehicle and Kekatos asked defendant for his license, registration and insurance. Kekatos then asked defendant if there were any weapons in the vehicle, to which defendant responded that there were no weapons. However, when Kekatos looked further into the vehicle, to do a routine check, he observed a clip attached to defendant’s left side pants pocket.
At the hearing, the following questions were asked by the assistant district attorney, and Kekatos gave the following answers:
*54 “Q. What did you do after seeing this clip?
“A. I asked the defendant to step out of the vehicle. I asked him to put his hands on the vehicle. I did a search, went for that pocket, pulled out a gravity knife. Then I did another search on his body, found another gravity knife on his right side.
“Q. Just to take a step back, what did you believe that clip was on the Defendant’s left pants pocket?
“A. Gravity knife.
“Q. What made you believe that was a gravity knife?
“A. I believe it definitely was a knife, wasn’t sure if it was a gravity knife or not. I recognized that knife on previous arrests. I arrested people with the same clip known to be a gravity knife or any other kind of knife.
“Q. You said that you also recovered — what did you recover out of Defendant’s right pants pocket?
“A. An additional gravity knife.
“Q. After recovering the gravity knife, what did you do?
“A. I furthered my search. I also recovered a plastic case containing three Marijuana cigarettes in the Defendant’s left pants pocket.
“Q. What did you do at that point?
“A. I placed the Defendant under arrest.”
On cross-examination, Kekatos testified that he and his partner had not approached defendant’s vehicle with their guns drawn and that defendant had been cooperative throughout the entire process. Kekatos testified that the clip was metal but that he could not recall how many inches it was. When asked to describe the clip, Kekatos responded “[j]ust a regular— something that looks like it clips onto your belt. There [are] not too many items that clip onto your belt.” However, he clarified that it was not clipped onto defendant’s belt, rather it was clipped onto his pants pocket.
After the hearing, Judicial Hearing Officer (J.H.O.) Cesar Quinones found Kekatos’s testimony to be credible and recommended the denial of defendant’s motion to suppress. On July 27, 2010, Judge Toko Serita issued an oral decision, adopting the J.H.O.’s findings of fact but rejecting the J.H.O.’s proposed conclusions of law and recommendation, and granted defendant’s motion to suppress the physical evidence. Judge Serita indicated that his written decision would follow. On August 30, *55 2010, a written decision and order memorializing Judge Serita’s oral decision was issued. The court held that Kekatos’s observation of a clip attached to defendant’s pocket, without more, did not give rise to a reasonable suspicion to justify the seizure of the gravity knife from defendant along with the other contraband.
The People moved for leave to reargue their opposition to the motion to suppress on October 29, 2010, and defendant opposed the motion. By decision and order dated February 7, 2011, Judge Serita granted reargument but adhered to his prior determination granting suppression of the physical evidence. The People appeal from both the August 30, 2010 order and the February 7, 2011 order.
Upon a review of the record, we conclude that the Criminal Court properly granted defendant’s suppression motion. As the Criminal Court correctly noted, the initial stop of defendant’s vehicle for a traffic infraction based upon Kekatos’s observations of a defective brake light, in violation of Vehicle and Traffic Law § 375 (40), was lawful and it was permissible for Kekatos to order defendant to exit the vehicle even without a particularized reason for believing that defendant possessed a weapon (see People v Robinson, 74 NY2d 773, 775 [1989]). However, before a police officer may conduct a limited search of a detainee in a public place, he or she must have a “reasonable suspicion” that such person is committing, has committed or is about to commit a crime (see CPL 140.50 [3]; People v De Bour, 40 NY2d 210, 223 [1976]), regardless of whether the detainee is a pedestrian or an occupant of a vehicle (see People v Garcia, 20 NY3d 317 [2012]). Reasonable suspicion is defined as “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand” (People v Cantor, 36 NY2d 106, 112-113 [1975]). It may not rest on equivocal or “innocuous behavior” that is susceptible of an innocent as well as a culpable interpretation (People v Carrasquillo, 54 NY2d 248, 252 [1981]). “To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion” (Cantor, 36 NY2d at 113; see also People v Brannon, 16 NY3d 596, 602 [2011]). “Vague or unparticularized hunches will not suffice” (Cantor, 36 NY2d at 113). Moreover, in the case of a gravity knife, the mere possession of which is a crime (see Penal Law § 265.01 [1]), “the detaining officer must have reason to *56 believe that the object observed is indeed a gravity knife, based on his or her experience and training and/or observable, identifiable characteristics of the knife” (Brannon, 16 NY3d at 599). “An individual may not be detained merely because he or she is seen in possession of an object that appears to be a similar, but legal object,” such as another type of knife (Brannon, 16 NY3d at 599).
Here, after defendant was ordered out of his vehicle, it was impermissible for Kekatos to pull the gravity knife out from defendant’s left side pants pocket, solely based on the officer’s observation of a clip attached to that pocket, since he was unable to assert specific and articulable facts leading to his belief that defendant possessed a gravity knife. This is not a case where the officer also observed, in addition to a clip, the top of the knife protruding from defendant’s pocket in plain view, or a portion of the knife handle (compare Brannon, 16 NY3d at 600; People v Fernandez, 16 NY3d 596, 600-601 [2011] [decided with Brannon]; People v Neal, 79 AD3d 523 [2010]; People v Herrera, 76 AD3d 891 [2010], affd 16 NY3d 881 [2011]; People v Mendez, 68 AD3d 662 [2009]; People v Best, 57 AD3d 279 [2008]). Rather, here, Kekatos saw only a clip, and nothing more, which he could not describe in detail. Thus, Kekatos was unable to describe any observable characteristics of the gravity knife, as opposed to a similar but legal knife, leading him to form a reasonable suspicion that defendant possessed a gravity knife, and thereby justifying an invasive intrusion (see Brannon, 16 NY3d at 599). Furthermore, Kekatos’s testimony on cross-examination demonstrated that he only assumed the clip indicated the possession of a gravity knife, and that he disregarded the many innocuous items that the clip could have contained. Consequently, he merely surmised that defendant was in possession of a gravity knife, which was insufficient to establish reasonable suspicion (see People v Vargas, 89 AD3d 582 [2011]). Additionally, Kekatos was unable to demonstrate, based on his experience and training, his reason to believe that, based on the object observed, defendant was in possession of a gravity knife (see Brannon, 16 NY3d at 599). Kekatos did not even detail how many of his 130 arrests had involved gravity knives (compare Fernandez, 16 NY3d at 601). Therefore, since it cannot be said, as a matter of law, that Kekatos had reasonable suspicion that defendant possessed a gravity knife, his retrieval of the gravity knife from defendant’s pocket was improper.
Finally, despite the People’s contention to the contrary, a police officer’s fear for his or her safety is not dispositive of *57 whether contraband was properly seized (see People v Batista, 88 NY2d 650 [1996]; Herrera, 76 AD3d at 894). The propriety of a limited search is not automatic, and the detaining officer must still have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is “armed and dangerous” (Batista, 88 NY2d at 654; see People v Carney, 58 NY2d 51 [1982]). Here, not only did Officer Kekatos not testify or indicate that he feared for his safety, he also did not demonstrate that he had a reasonable suspicion that defendant was in possession of a gravity knife to justify the search.
Accordingly, defendant’s motion to suppress the physical evidence was properly granted with respect to the first gravity knife, along with the second gravity knife and marihuana as the fruits of the illegal seizure (see People v Stith, 69 NY2d 313 [1987]), and the order dated February 7, 2011, insofar as appealed from, is affirmed.
Weston, J.R, Aliotta and Solomon, JJ., concur.