OPINION OF THE COURT
Melissa A. Crane, J.
This case calls upon the court to determine whether a police officer, after stopping a vehicle for a traffic infraction, may seize a knife without having reasonable suspicion that it is an illegal gravity knife. On March 13, 2015, this court held a Mapp hearing on defendant’s motion to suppress evidence of a gravity knife. Upon consideration of all testimony, and the arguments of counsel and the People, the court will not suppress the knife for the following reasons:
Findings of Fact
Police Officer Francisco Adames testified for the People. Having observed his testimony and overall demeanor, the court finds Officer Adames’s testimony credible in all respects. Officer Adames has been a police officer with the New York City Police Department for nine years. He has received training in the identification of gravity knives. Out of his approximately 187 arrests, about 25 were for criminal possession of gravity knives. Officer Adames also testified that over the past nine years, he has examined numerous other knives. Not all of those were gravity knives.
On the evening of June 25, 2014, Officer Adames noticed defendant, sitting in the driver’s seat of a vehicle, illegally parked in front of a bus stop at 150th Street and 8th Avenue. Shortly after observing the car, Officer Adames watched defendant pull out of the bus stop and drive southbound on 8th Avenue without signaling.
Upon observing traffic infractions, Officer Adames initiated a traffic stop at 149th Street and 8th Avenue. Officer Adames testified that the stop was because he had perceived traffic infractions.
Officer Adames then approached the driver’s side of the vehicle and asked defendant for his license and registration. In re *683 sponse, defendant moved his hand toward his right rear pants pocket, apparently to retrieve his driver’s license. As soon as defendant shifted his arm to obtain his information, Officer Adames observed a “white silver” metal piece attached to a clip with “tracks” on the top. Officer Adames testified that, based on his training and experience, he believed the object in defendant’s pocket to be a knife. At no point did Police Officer Adames testify that he thought the knife on defendant’s person was a gravity knife. Rather, the Officer testified: (1) that the knife looked like a pen clip; and (2) that he thought it was just “a knife” (tr at 38-39).
After seeing the knife, Officer Adames asked defendant to hand him the knife “for my safety and his safety.” Defendant complied and handed the knife over to Officer Adames. The Officer then requested that defendant step out of the vehicle and move to the rear of the car where both defendant and Officer Adames would be safe from oncoming traffic. Officer Adames further testified that, at this point, defendant was not under arrest.
While defendant remained at the rear of the vehicle, Officer Adames tested the knife to determine whether it was a gravity knife. It was. Officer Adames also demonstrated in court that the knife was a gravity knife.
After testing the knife, Officer Adames placed defendant in handcuffs and performed a pat down of defendant’s outer clothing. Officer Adames testified that while patting down defendant, he found a “large amount of U.S. currency” (tr at 17) in defendant’s pocket that he returned to one of defendant’s relatives, and therefore, did not voucher. At this point, Officer Adames placed defendant under arrest and transported him to the 32nd Precinct.
Defendant testified that on June 25, 2014 he was driving with four family members in his father’s 2013 Lexus IS 250. At the time an officer stopped defendant, he was working to refill ATM machines in the area. Defendant admitted that he did park in a bus stop and neglected to signal when pulling out from that spot into traffic. Defendant stated that it was not Officer Adames, but a different officer, who approached the driver’s side of the car and asked defendant for his license and registration. Defendant also averred that he had $10 thousand in $20 bills on his lap to refill the ATM machines for his family’s business. He claimed the officer instructed defendant to put the money at his feet, keep his hands in plain view and step out of the vehicle.
*684 At that point, the officer asked defendant whether he owned the car. Defendant stated that he did not own the vehicle, but rather it belonged to his father. Despite defendant’s response, the officer relentlessly inquired who owned the vehicle that defendant drove that day. At some point during the officer’s questioning, defendant said the car belonged to himself, instead of his father. Defendant testified that he “did not have a choice,” because the officer kept pestering him about the car’s ownership. The officer asked him if he had a knife and defendant stated that he did. The officer then reached into defendant’s pocket and recovered the knife.
Conclusions of Law
Defendant does not dispute that the traffic infractions the officer witnessed actually occurred, and therefore, “the legality of the initial stop itself cannot be challenged” (brief for defendant at 3). Defendant correctly interprets the law. Probable cause to believe a Vehicle and Traffic Law violation has occurred provides an objectively reasonable basis for the police to stop a vehicle (People v Robinson, 97 NY2d 341 [2001]). This rule applies even to the most minimal infractions (People v Pealer, 20 NY3d 447, 457 [2013]). Here, defendant admits that he was parked in front of a bus stop and then pulled his car out into traffic without signaling. Thus, the initial stop of defendant’s vehicle was lawful because the officers had a reasonable (and non-pretextual) cause to believe that a traffic infraction had transpired.
Nevertheless, defendant asserts that the officers used the traffic infractions as a pretext to stop defendant because he was “an obvious man of Middle Eastern descent” operating a late model, luxury Lexus automobile (brief for defendant at 4). Defendant points to the 911 Sprint report from just before his arrest that states, “INVESTIGATE/POSSIBLE CRIME; SUSP VEHICLE/OUTSIDE.”
Not only did the Court of Appeals reject precisely this sort of argument in People v Robinson (97 NY2d at 351-352), there is absolutely nothing in the record to suggest that the police stopped defendant because of his ethnic background. Indeed, Police Officer Adames could not even remember the make or model of the vehicle. This contradicts defendant’s assertion that Officer Adames was suspicious of a Middle Eastern man driving a Lexus automobile.
The court’s real challenge in the context presented here (i.e., an automobile stop for a traffic infraction) is to apply recent *685 authority that relates to when, exactly, a police officer has reasonable cause to search and seize a gravity knife. In People v Brannon (16 NY3d 596 [2011]), the defendant was walking along a street in Manhattan. A police officer stopped defendant and seized what turned out to be a gravity knife. The officer described that he could see the hinged part of a knife in defendant’s back pocket. Upon approaching closer to defendant, the officer saw the outline of a knife through the material of defendant’s back pocket. The officer testified that the knife looked like a “typical pocket knife” (16 NY3d at 600). Upon questioning, defendant admitted he had a knife. The officer then frisked defendant and recovered what turned out to be a gravity knife.
The Supreme Court denied defendant’s motion to suppress, finding that the stop and search were proper. The Appellate Division affirmed (60 AD3d 498, 499 [1st Dept 2009]). The Court of Appeals reversed. The Court of Appeals held that in order to have reasonable suspicion to believe that an individual possesses a gravity knife, the detaining officer must have reason to believe that the object is indeed a gravity knife based on: (1) his or her training and experience; or (2) discernable aspects of the knife itself. In Brannon, the officer never testified that he suspected the knife was a gravity knife. Hence, suppression was appropriate (see also People v Vargas, 89 AD3d 582, 583 [1st Dept 2011] [suppression warranted where officer did not articulate any facts from which he could have inferred the knife was a gravity knife]).
By contrast, in People v Fernandez (16 NY3d 596 [2011]), decided with Brannon, the Court of Appeals held that the police officer had reasonable suspicion to believe that the knife was an illegal gravity knife. The officer had testified in Fernandez that he saw in plain view the “head” of a knife sticking out, clipped to defendant’s pants pocket and, based on his experience, people typically carry gravity knives in their pocket with a clip and the “head” protruding (id. at 602).
The following year, in People v Miranda (19 NY3d 912 [2012]), the Court of Appeals appeared to draw back from its holdings in Brannon and Fernandez. In Miranda, while issuing a summons to defendant for trespass, a violation (see Penal Law § 140.05), and questioning him about his presence in the park after hours, the police officer observed a knife on defendant’s person and seized it. Although the police officer did not know beforehand, the knife turned out to be a gravity knife. *686 The Court of Appeals affirmed the Appellate Division, First Department (76 AD3d 466 [2010]), and held that the officer was entitled to seize the knife from defendant when the officer saw the knife. The Court of Appeals specifically distinguished its holdings in Brannon and Fernandez stating: “The officer here, unlike the officers in those cases, was already engaged in a lawful encounter with defendant prior to spotting the knife, and was thus not required to have a reasonable suspicion that the knife he observed was a gravity knife before he took it.” (19 NY3d at 914 [emphasis added]; see also People v Gray, 41 Misc 3d 133[A], 2013 NY Slip Op 51796[U] [App Term, 1st Dept 2013].)
Later that year, the Court of Appeals had occasion to address the issue of a weapon seizure in the context of an automobile stop. In People v Garcia (20 NY3d 317 [2012]), the police, on patrol in a marked police vehicle, pulled over defendant’s vehicle for a defective rear brake light. An officer, upon seeing that the passengers made furtive movements and seemed nervous, asked if anyone in the vehicle had a weapon. The passenger in the rear, middle seat responded that he possessed a knife. The officer directed that passenger to place the knife on the floor, keep his hands in view and directed all passengers out of the vehicle. The officers frisked each person as that person exited the car. After the last individual, one of the officers noticed what appeared to be a gun wedged between the front passenger seat and the door of the vehicle. It was an air pistol.
Defendant moved to suppress this and other weapons recovered from the vehicle. On reargument, the Supreme Court held that the officer’s inquiry about the presence of weapons was permissible, even though the officer lacked a founded suspicion of criminality. The Appellate Division, First Department (85 AD3d 28 [2011]), reversed and vacated the judgment convicting defendant, granted defendant’s suppression motion and dismissed the information. The Court of Appeals affirmed that part of the Appellate Division’s decision that suppression was warranted: “Whether the individual questioned is a pedestrian or an occupant of a vehicle, a police officer who asks a private citizen if he or she is in possession of a weapon must have founded suspicion that criminality is afoot.” (20 NY3d at 324.) Thus, the right to be free from suspicionless searches applies equally to occupants of a vehicle as to pedestrians (cf. People v Mercado, 120 AD3d 441, 442 [1st Dept 2014] [police could search defendant’s person upon arresting him for driving *687 with a suspended license and could search the car given the totality of the circumstances, including not only the unlicensed driving, but the observation of a possible drug sale, that the car’s registration was not in defendant’s name and defendant’s concern that he would face reincarceration for a Vehicle and Traffic Law infraction]).
Is suppression appropriate when, as in this case, a police officer, after having pulled a car over for two traffic infractions, notices something that could be a gravity knife, but is not sure that it is, in fact, a gravity knife? The prosecution, relying on People v Miranda, equates stopping defendant for traffic infractions with a “lawful encounter.” However, Miranda involved a face-to-face encounter where defendant was stopped for trespass. In Garcia, the Court of Appeals suppressed the weapons the police found in the car, because there was no reasonable suspicion of criminality, even though the police had pulled the car over for a traffic infraction (i.e., a broken brake light). If, under Garcia, vehicle occupants have the same rights as pedestrians, why should the court not follow Brannon and suppress the gravity knife in this case?
Despite their apparent inconsistency, it is possible to reconcile Miranda with Garcia. In Miranda, the police officer noticed a knife on defendant’s person, regardless of whether he knew it was a gravity knife or not. In Garcia, the police did not notice any weapons. They only found weapons after inquiring about them, ordering everyone out of the car and then searching the car. In this case, Police Officer Adames noticed a knife on defendant’s person when defendant leaned over to retrieve his license. As such, the officer was engaged in a lawful encounter (the traffic infractions), noticed that there was a knife and, therefore, pursuant to Miranda, did not need to have a reasonable suspicion that the knife was an illegal gravity knife before he took it.
This interpretation takes into account the dangerous realities police officers face when conducting routine traffic stops. Occasionally occupants of vehicles are armed. A contrary ruling would require an officer, who observes a knife while conducting a lawful traffic stop, to leave the weapon in defendant’s possession until he or she knew the knife was a gravity knife. This would place police officers in unnecessary danger (see People v Benjamin, 51 NY2d 267, 271 [1980], abrogated on other grounds recognized by People v Breazil, 191 Misc 2d 817 [Sup Ct, Kings County 2002] [“(i)t would, indeed, be absurd to sug *688 gest that a police officer has to await the glint of steel before he can act to preserve his safety”]).
Cases following Miranda suggest this result is correct (see e.g. Matter of Gregory N., 108 AD3d 553, 554 [2d Dept 2013] [police officer was justified in detaining defendant as a suspected truant and further justified in seizing the knife protruding from defendant’s pants pocket, even though he was not sure it was a gravity knife]; see also People v Terrance, 101 AD3d 624, 625 [1st Dept 2012] [suppression denied where officer was entitled to make common-law inquiry based on his observations that defendant was carrying a type of bag associated with shoplifting, appeared to be casing a store and admitted to having a knife that turned out to be a gravity knife]).
The court is mindful of People v Cruz (39 Misc 3d 52 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]), a case that contains essentially the same facts as this one. In Cruz, the Appellate Term, Second Department did affirm the trial court’s suppression of the gravity knife. However, that decision does not mention Miranda. Here, the People’s position rests primarily on Miranda. Pursuant to Miranda, and the discussion, supra, the court denies suppression, at least giving credence to Police Officer Adames’s view of events.
Defendant’s version of events is legally more problematic. Nevertheless, to suppress would remain inappropriate. Defendant claims that his knife was not in view, but that he admitted he had a knife when the officer asked him if he had any weapons. Of course, pursuant to Garcia, the traffic stop alone is an insufficient basis to inquire about weapons. Rather, the police must suspect that criminality is afoot (see People v Garcia, 20 NY3d 317, 324 [2012]). However, according to defendant, once the stop for the traffic violation occurred, the officer saw defendant holding $10 thousand in cash in his lap. That much money on someone’s lap, in a high crime neighborhood, would certainly be unusual. Therefore, after asking defendant to step out of the car and ascertaining that defendant did have a knife, the officer had reasonable suspicion to recover it. Nevertheless, it strains credulity to believe that anyone would sit in a car, with $10 thousand in plain view, anywhere in Manhattan. It is much more likely that “a large amount of U.S. currency” would be secreted somewhere on defendant’s person. Because the court denies defendant’s motion to suppress there was, ergo, probable cause for the arrest as there is no dispute the knife was an illegal gravity knife.
*689 Accordingly, it is ordered that the court denies defendant’s motion to dismiss the charge of attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [1]) against defendant; and it is further ordered that the court denies defendant’s motion to suppress the recovered gravity knife pursuant to Mapp v Ohio (367 US 643 [1961]).